327 S.E.2d 703

**STATE of West Virginia**

v.

**Scott HIGHLAND.**

**No. 16136.**

Supreme Court of Appeals of West Virginia.

March 1, 1985.

Concurring Opinion March 12, 1985.

of synovial fluid which has become enclosed in a sac of membrane ...."

Howard W. Ferris, Grafton, for appellant.

Janet Frye Steele, Asst. Atty. Gen., Charleston, for appellee.

McGRAW, Justice:

This case comes before the Court upon a petition for appeal in which the petitioner seeks reversal of a final sentencing and transfer order issued by Judge Luff in the Circuit Court of Taylor County. The petitioner contends that the judge's order exceeds the authority granted a sentencing court under the relevant statutory law. For the reasons set forth below, we reverse the final order of the sentencing court.

The petitioner and another juvenile were charged with burglary, armed robbery, assault, and first-degree arson, stemming from an incident that occurred in Flemington, Taylor County, on January 12, 1982. The two juveniles gained entrance to the home of an elderly woman by leading her to believe that one of them was a neighbor. Once inside the home the petitioner's accomplice, wielding a knife, assaulted the woman demanding money from her. They took approximately fifteen dollars from the terrorized woman's purse, searched the house for other valuables, set fire to one or more items of furniture, and fled. Once they were gone the woman managed to get to a neighbor's house for help. At the time of this incident the petitioner was a juvenile, aged sixteen years and two months. The other individual charged was a juvenile approximately seventeen years and ten months of age.

The petitioner was taken into police custody the following day and confessed to his role in the incident. Subsequently, the circuit court, pursuant to West Virginia Code § 49-5-10 (1980 Replacement Vol.), ordered that the petitioner be transferred from juvenile jurisdiction and tried under the court's adult jurisdiction. The petitioner then appealed his transfer to adult jurisdiction but this Court denied the petitioner's appeal, thereby upholding the transfer.

On January 13, 1983, the petitioner entered into a plea agreement in which he pleaded guilty to the burglary and arson charges. On the same day, the court sentenced him to the West Virginia Penitentiary for 1 to 15 years for burglary and 2 to 20 years for arson, with the sentences ordered to be served consecutively rather than concurrently. Further, since the petitioner was still under eighteen years of age, the court committed him to the custody of the Commissioner of Corrections for further confinement in a juvenile institution until he was eighteen. The petitioner had been incarcerated in a detention center for juveniles for the one year between his arrest and this initial sentencing and commitment order. Since then he has been committed to the Institutional Home for Youth at Salem.

In anticipation of the petitioner's eighteenth birthday on November 26, 1983, the circuit court, on its own motion, held a dispositional hearing on October 14, 1983, to determine whether the petitioner should be transferred from the juvenile facility to the state penitentiary. At the hearing, statements from the petitioner, his attorney, and the prosecuting attorney were taken. Additionally, the court reviewed

the records relating to the petitioner's rehabilitation, including the report submitted on behalf of the Commissioner of Corrections by the Assistant Commissioner which recommended that the petitioner be released, with or without probational terms.[1] The court, however, disagreed with the Commissioner's findings of rehabilitation and ordered that the petitioner be transferred to the Huttonsville Correctional Center upon his eighteenth birthday to serve the remainder of the originally imposed sentence, without modification. This final sentencing and transfer order is the subject of this appeal.

## I.

■ Juveniles who are transferred to and convicted under the adult jurisdiction of a circuit court are nevertheless afforded the same commitment and rehabilitation rights as those adjudged delinquent under juvenile jurisdiction. The legislature has mandated in West Virginia Code § 49-5-16(b) (Supp.1984), that, "No child who has been convicted of an offense under the adult jurisdiction of the circuit court shall be held in custody in a penitentiary of this State...." Accordingly, the legislature has provided at least three alternatives to a sentencing court for the proper disposition of such an individual.

First, under West Virginia Code § 49-5-13(e) (Supp.1984), where a juvenile is transferred and convicted under adult jurisdiction the court may, "in lieu of sentencing such person as an adult," make its disposition under the section 49-5-13 provisions for treatment of juveniles adjudged delinquent. *See also* West Virginia Code § 49-5-13b(c) (Supp.1984). Second, a sentencing court may initially proceed under the Youthful Male Offender Act, suspending the imposition of an adult sentence and committing the individual to the custody of

Commissioner of Corrections for placement in a rehabilitation center for youthful offenders. *See* West Virginia Code § 25-4-6 (1980 Replacement Vol.).

Third, as was done in the case at hand, the court may simply sentence the juvenile as an adult. But, as directed by West Virginia Code § 49-5-16(b) (Supp.1984), the court must commit the child to a state juvenile facility rather than ordering the sentence to be served, *ab initio*, in an adult penal institution. This statute, however, does provide a procedure by which individuals eighteen years or older may be subsequently transferred to an adult penitentiary. It is this statutory procedure which is specifically at issue in this appeal.

West Virginia Code § 49-5-16(b) provides in full that:

No child who has been convicted of an offense under the adult jurisdiction of the circuit court shall be held in custody in a penitentiary of this State: Provided, that such child may be transferred from a secure juvenile facility to a penitentiary after he shall attain the age of eighteen years if, in the judgment of the commissioner of the department of corrections and the court which committed such child, such transfer is appropriate: Provided, however, that any other provision of this Code to the contrary notwithstanding, prior to such transfer the child shall be returned to the sentencing court for the purpose of reconsideration and modification of the imposed sentence, which shall be based upon a review of all records and relevant information relating to the child's rehabilitation since his conviction under the adult jurisdiction of the court.

## II.

The primary issue in this appeal centers upon the language of section 49-5-16(b)

---

**1.** The Department of Corrections report was not made part of the record in this appeal. However, its findings and conclusions are ascertainable from other portions of the record, including the circuit court's final order which states that the court "disagrees with the recommendation of the Assistant Commissioner of Corrections that the defendant should be placed on probation or released outright." References to the report are also found in the transcript of the October 14, 1983 hearing. Included in the record of this appeal are three affidavits from Corrections Department personnel which attest, in highly favorable terms, that the petitioner's efforts and progress toward rehabilitation have been exceptional.

which authorizes a transfer, "if, in the judgment of the commissioner of the department of corrections and the court which committed such child, such transfer is appropriate...." The State contends that the transfer decision rests ultimately with the sentencing court. As their only support for this construction, the State cites to the final proviso of section 49–5–16(b) which allows a sentencing court to modify a sentence when a transfer is to take place. The State argues that the final proviso manifests on intent that all decisions under the entire section be left to the discretion of the sentencing court. There is no merit to this argument.

To begin, the transfer decision and the modification decision are distinctly separate matters. In fact, the legislature did not enact the final proviso permitting a modification of sentence until 1982. *See* 1982 W.Va. Acts 525. The language of the separate provision relating to the transfer decision was not amended, and, contrary to the State's untenable assertion, the language of the added proviso does not indicate any legislative intent to alter the meaning of the already existing transfer requirements. The 1982 provision relating to reconsideration and modification of a sentence only becomes applicable where a transfer is to take place, and has no direct relevance to the question of the appropriateness of the transfer.

The applicable rule of statutory construction states, "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." *See* Syl. pt. 1, *State v. Warner,* 172 W.Va. 502, 308 S.E.2d 142 (1983); Syl. pt. 2, *State ex rel. Underwood v. Silverstein,* 167 W.Va. 121, 278 S.E.2d 886 (1981); Syl. pt. 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968). Accordingly, it is clear that under West Virginia Code § 49–5–16(b) (Supp.1984), the legislature has provided that a juvenile convicted and sentenced in adult court may be transferred after reaching the age of eighteen from a juvenile facility to an adult penal institution only if the Commissioner of the Department of Corrections and the court which committed the juvenile agree that such transfer is appropriate. Without the assent of both, no transfer is authorized under the statute.[2]

### III.

As noted above, the fourth requirement in section 49–5–16(b), mandating a pre-transfer hearing, was added by the legislature as the final proviso of that section in 1982. The primary focus of our statutes relating the juvenile offenders is rehabilitation. *See State ex rel. H.K. v. Taylor,* 169 W.Va. 639, 289 S.E.2d 673, 678, n. 4 (1982). The benefits of these rehabilitative programs are intended for all youths committed to juvenile facilities, whether ad-

**2.** This Court has previously noted this clear meaning in *State ex rel. R.C.F. v. Wilt,* 162 W.Va. 424, 428, 252 S.E.2d 168, 170 (1979), where we stated that under West Virginia Code § 49–5–16(b), a "child cannot be transferred from a secure juvenile facility to a penitentiary after he attains the age of eighteen, unless in the judgment of *both* the court which committed the child and the commissioner of the department of corrections such transfer is appropriate." (emphasis added.)

Additionally, we note the language of this statute raises the possibility that, in the event of a continuing disagreement over the appropriateness of a transfer, the Commissioner may be required, due to a substantial adult sentence, to maintain an adult in a secure juvenile facility. While this possibility exists under the letter of the statute, practical realities essentially rule out such a situation for two related reasons. First, under West Virginia Code § 28–1–6 (1980 Replacement Vol.), the Commissioner has the au-

thority to grant a discharge or parole to any inmate of a juvenile facility. Therefore, the Commissioner may operate under the authority of this statute when there has been a determination that, for rehabilitative reasons or otherwise, the petitioner or one similarly situated should be released. Second, any individual sentenced as an *adult* but initially *committed to a* juvenile facility would necessarily be under eighteen years of age. Therefore, the juvenile treatment authorities would have three to five years to attempt rehabilitation before the individual reaches the age where release or transfer becomes a compelling consideration. *See* W.Va.Code § 25–4–6 (1980 Replacement Vol.) (although this provision of the Youthful Male Offenders Act does not apply to individuals originally sentenced as an adult, it does illustrate that the legislature contemplated that residents of a juvenile facility could be up to twenty-three years of age.).

judicated delinquent or convicted in adult court. Thus, the legislature's 1982 amendment to section 49–5–16(b) was intended to underscore that when a youth is sentenced as an adult, his subsequent efforts and progress toward rehabilitation while committed to a juvenile treatment facility should not be overlooked. By implication, the statute leaves the final decision regarding modification to the sentencing court. However, the legislature imposed the hearing and review procedure for a specific purpose—to recognize, for the benefit of the youthful offender, any rehabilitative progress achieved. Neither the individual nor society is served by refusing to recognize rehabilitative progress simply because an individual has not reached a state of perfection or has not fulfilled the sentencing court's retributive expectations.[3] Accordingly, the findings and recommendations of the juvenile treatment authorities should be given substantial weight.

Additionally, similar to other dispositional matters,[4] the court is obligated to make specific findings upon the record which relate its final decision to the weight accorded "all records and relevant information relating to the child's rehabilitation since his conviction under the adult jurisdiction of the court." West Virginia Code § 49–5–16(b) (1984 Supp.). The absence of the Commissioner's assent to the transfer in this case, however, deprived the sentencing court of the authority to hold a pre-transfer hearing to consider modifications. Under West Virginia Code § 49–5–16(b) (Supp.1984), a pre-transfer modification hearing is required only when a transfer is imminent, that is, only when both the sentencing court and the Commissioner of Corrections have determined that transfer to an adult institution is appropriate. Therefore, it is unnecessary for us to determine whether the record supports a finding that the court's decision not to modify the original sentence was clearly wrong.[5]

**3.** In reconsideration of a previously imposed sentence, the court should not, in the face of clear evidence of rehabilitative progress, arbitrarily place undue emphasis upon the nature of the offense committed. This Court's reasoning regarding West Virginia Code § 49–5–10 in *State v. M.M.,* 163 W.Va. 235, 247, 256 S.E.2d 549, 559 (1979) applies with equal force to the statutory mandate of the final proviso of section 49–5–16(b):

> The court placed undue emphasis on the nature of the crime and failed to properly consider other factors the statute requires the court to consider. All persons who commit violent crimes are not alike in their prospects for rehabilitation. Some violent offenders can be rehabilitated, others can not be. Placing undue weight on the nature of the crime and excluding other factors assures that no distinction is made between these groups.

*See also State ex rel. S.J.C. v. Fox,* 165 W.Va. 314, 268 S.E.2d 56, 60–61 (1980).

**4.** *See, e.g.,* Syl. pt. 2, *State v. McDonald,* 173 W.Va. 263, 314 S.E.2d 854 (1984); Syl. pt. 3, *State ex rel. B.S. v. Hill,* 170 W.Va. 323, 294 S.E.2d 126 (1982); Syl. pt. 2, *State ex rel. R.S. v. Trent,* 169 W.Va. 493, 289 S.E.2d 166 (1982); Syl. pt. 4, *State ex rel. D.D.H. v. Dostert,* 269 S.E.2d 401 (W.Va.1980); Syl. pt. 1, *State ex rel. S.J.C. v. Fox, supra.*

**5.** We also note that due to the fact that the offenses which ultimately led to the petitioner's conviction and original sentencing occurred before the amendment took effect, there were questions raised in the record regarding the

applicability of this re-evaluation requirement to the petitioner's case. Because the Commissioner and the sentencing court may later agree that transfer of the petitioner to an adult institution is appropriate, we find it expeditious to resolve the issue now.

Generally, statutes are given prospective operation. *See* Syl. pt. 3, *Shanholtz v. Monongahela Power Company,* 270 S.E.2d 178 (1980). *See also* West Virginia Code § 2–2–10(bb) (1979 Replacement Vol.). Applying the 1982 amendment to the case at hand, however, does not violate this general rule. The sole object of the amendment was a requirement for pre-transfer hearings to *reconsider* already imposed sentences. This Court has previously recognized that a new statute may be given effect upon current aspects of an ongoing factual situation without coming into conflict with the presumption of prospective operation. In Syllabus point 3 of *State ex rel. Manchin v. Lively,* 170 W.Va. 672, 295 S.E.2d 912 (1982), we held that:

> A law is not retroactive merely because part of the factual situation to which it is applied occurred prior to its enactment; only when it operates upon transactions which have been completed or upon rights which have been acquired or upon obligations which have existed prior to its passage can it be considered to be retroactive in application.

*See also* Syl. pt. 2, *Devon Corporation v. Miller,* 167 W.Va. 362, 280 S.E.2d 108 (1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982). Accordingly, we find the 1982 amendment applicable to the petitioner's situation.

■ A straightforward reading of West Virginia Code § 49–5–16(b) (Supp.1984) clearly indicates there are four prerequisites to a lawful transfer of an individual sentenced in adult court but initially committed to a juvenile facility. These are: (1) the transferee must be at least eighteen years of age; (2) the sentencing court must deem the transfer appropriate; (3) the Commissioner of Corrections must deem the transfer appropriate; and (4) the sentencing court must hold a hearing prior to the approved transfer to evaluate the individual's progress toward rehabilitation and consider modification of the originally imposed sentence. In view of the absence of the third requirement in this case, we reverse the decision of the court below ordering the transfer of the petitioner to an adult penal institution.

Reversed.

NEELY, Chief Justice, concurring:

The decision in this case is correct but the majority writer's language is eminently misleading. The child in question cannot be sent to Moundsville Penitentiary or the Huttonsville Correctional Center by the sentencing judge without the concurrence of the Commissioner of the Department of Corrections, *but that does not mean that the child cannot continue to be punished in the sole discretion of the circuit court.* The majority opinion implies that both commissioner and judge must concur before a child can be incarcerated after his eighteenth birthday, but that is not the holding of this court. Accordingly I concur in order to clarify the law.

*W.Va.Code,* 49–5–16(b) [1982] in no way stands for the proposition that without the concurrence of both the Commissioner of the Department of Corrections *and* the circuit court a child cannot be further punished by incarceration in an adult institution after his eighteenth birthday when he has been convicted of a serious crime such as rape, murder, or armed robbery. In light of the fact that West Virginia's penitentiaries are woefully inadequate there will always be pressure on the commissioner not to incarcerate individuals for no better reason than the deploring lack of available beds.

The real holding of this Court is that without the concurrence of the commissioner, a child upon becoming an adult, cannot be transferred immediately from the West Virginia Industrial Home for Youth to a full-fledged adult prison. The child may, however, be transferred to any youthful offender facility, such as the forestry camp, for a number of additional years without the agreement of the commissioner. The case of *State ex rel. R.C.F. v. Wilt,* 162 W.Va. 424, 252 S.E.2d 168 (1979) in no way stands for the proposition for which it is cited in the majority's footnote 2. *R.C.F. v. Wilt* simply repeats the words of *W.Va.Code,* 49–5–16(b) [1982] without any construction whatsoever; the quotation is simple dicta for the purpose of *Wilt's* holding.

The preferable view of legislative intent, and a view not foreclosed by the majority opinion, is that the decision concerning a juvenile's incarceration after his eighteenth birthday for an offense for which he was convicted under the adult jurisdiction of the circuit court should remain exclusively in the province of the circuit court judge. On the other hand, whether the child should be transferred from the Industrial Home for Youth directly to either Moundsville Penitentiary, Huttonsville Correctional Center, or the adult facility for women (now at Huttonsville) is a matter for joint decision between the commissioner and the circuit court. Once the circuit judge has determined that further punishment is warranted, the commissioner has the power to require that the child be further confined in a youthful male offender center rather than in Moundsville Penitentiary or the Huttonsville Correctional Center. (However, he cannot refuse to detain an offender after the circuit judge's determination.) In this regard it is important to note that under *W.Va.Code,* 25–4–6 [1975], the Youthful Male Offender Act, offenders assigned to a youth center are returned to the jurisdiction of the court that originally committed them when they have satisfactorily completed the center's training program.

The tone of the majority opinion implies that even the most heinous juvenile murderers, rapists, and armed robbers (who may have spent but three months in a youth center before they turn eighteen) should be treated similarly to juvenile misdemeanants who are presumed rehabilitated once they become adults. Since I doubt the majority would welcome such an inference, I would suggest that both the circuit courts and the commissioner interpret the statute as I have in this concurring opinion and require the issue to be brought back to this Court in an appropriate context for further clarification.

I am authorized to say that Justice BROTHERTON joins me in this concurrence.