464 S.E.2d 363

STATE of West Virginia, Appellee,

v.

Sean M. HARRIS, Appellant.

No. 22815.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 12, 1995.

Decided Oct. 27, 1995.

---

**44**

Scott E. Johnson, Assistant Attorney General, Charleston, for Appellee.

Stephen D. Herndon, Wheeling, for Appellant.

CLECKLEY, Justice:

The question presented in this case is whether the Circuit Court of Hancock County erred by transferring the defendant from a juvenile facility to the penitentiary without holding a hearing for the purpose of reconsideration and modification of his sentence as mandated by W.Va.Code, 49–5–16(b) (1982),[1]

---

1. W.Va.Code, 49–5–16(b) (1982), states:

   "No child who has been convicted of an offense under the adult jurisdiction of the circuit court shall be held in custody in a penitentiary of this State: Provided, That such child may be transferred from a secure juvenile facility to a penitentiary after he shall attain the age of eighteen years if, in the judgment of the commissioner of the department of corrections and the court which committed such child, such transfer is appropriate: Provided, however, That any other provision of this Code to the contrary notwithstanding, prior to such transfer the child shall be returned to the sentencing court for the purpose of reconsideration and modification of the imposed sentence,

and *State v. Highland,* 174 W.Va. 525, 327 S.E.2d 703 (1985).

In November of 1993, seventeen-year-old Sean M. Harris, the defendant below and appellant herein, pleaded guilty to the charge of murder in the first degree for the killing of Sean Carnahan and was sentenced to life imprisonment with a recommendation of mercy. The defendant began serving his sentence at the Facility for Juveniles located at Salem, West Virginia. He appeals an order of the Circuit Court of Hancock County entered July 7, 1994, which transferred him to the supervision of the West Virginia Department of Corrections for placement in the State penitentiary following his eighteenth birthday. His sole contention on this appeal is that he was entitled to a hearing under the above authority prior to his transfer to evaluate his progress towards rehabilitation and to then consider modification of the originally imposed sentence. While we generally agree with the defendant regarding the necessity of a hearing, we find the facts of this case create special circumstances and the hearing requested by the defendant is unnecessary. Accordingly, we affirm the judgment of the circuit court.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 4, 1993, Sean Carnahan was reported missing. When the victim's body was discovered along the railroad tracks it showed that he had suffered a severe blow to the head and stab wounds. The defendant later confessed to the killing. A knife was recovered from the crime scene which came from a residence where the defendant was staying. Certain items of the defendant's clothing were also recovered from the area where the murder occurred. At the plea agreement hearing held on November 12, 1993, the defendant testified that he became angry at Mr. Carnahan and hit him across the head with a railroad tie, stabbed him, and left him to die. Days prior to the killing, the defendant made threats against the victim.

In October of 1993, the defendant was indicted for first degree murder by a grand jury in Hancock County. By order entered October 13, 1993, this case was transferred to the adult jurisdiction of the circuit court. The defendant petitioned to enter a plea of guilty before the circuit court. The State and the defendant agree that at the plea hearing held November 12, 1993, the circuit court made a full and adequate inquiry to determine whether the defendant entered into the plea agreement knowingly and voluntarily. The following excerpt of the plea agreement demonstrates the defendant was aware that he would be bound by the plea agreement:

"THE COURT: All right. Sean, I want you to speak up because the purpose of this hearing today is for me to consider a proposed plea agreement that you have allegedly signed and that you are requesting that I accept. So I want you to speak up. I want you to feel free to consult with Mr. Herndon. I want you to feel free to tell me if you don't understand anything I say. Because when we are finished with all of this hearing today, I will ask you then what you want to do. If you tell me you want to enter a guilty plea and I accept that plea, you will then be bound by that plea for the rest of your life. You will never be able to change that plea again. So it's important that you understand what I am telling you, what rights you are giving up and that you know exactly what will happen to you.

"And in that regard, whatever this plea agreement is, that is what will happen to you. I won't permit you to change it and I won't permit the State of West Virginia to change it. All right?

"THE DEFENDANT: Yes, sir."

Under the terms of the plea agreement, the defendant agreed to the transfer to adult jurisdiction (which, in fact, already had taken place) and pleaded guilty to first degree mur-

which shall be based upon a review of all records and relevant information relating to the child's rehabilitation since his conviction under the adult jurisdiction of the court."

See note 4, *infra,* for the 1995 amendment to W.Va.Code, 49–5–16(b).

der.[2] The agreement further provided that the defendant would be incarcerated in the West Virginia Penitentiary for life with the recommendation of mercy and he would be eligible for parole after serving ten years of actual incarceration.

The defendant was returned to the juvenile detention facility because he was seventeen years old at the time the plea agreement was accepted. He was to be transferred to an adult facility upon his eighteenth birthday the following July.

## II.

## DISCUSSION

■ To resolve the issue raised in this appeal, we first must decide whether a plea agreement entered into by a seventeen-year-old juvenile who has been transferred to adult jurisdiction can render inapplicable the provisions of W.Va.Code, 49–5–16(b), as interpreted by *State v. Highland, supra.* Being a question of statutory construction, our review of this issue is *de novo. Sniffin v. Cline,* 193 W.Va. 370, 374, 456 S.E.2d 451, 455 (1995) ("[t]he circuit court's adjudicatory interpretation of these statutes is entitled to no special deference and is subject to our independent review").

Considering the unique circumstances of this case, we hold the provision of W.Va.

Code, 49–5–16(b), providing for a hearing to determine the rehabilitation status of a juvenile can be waived if the waiver is voluntary and intelligent and if an evidentiary hearing would serve no useful purpose as contemplated under *Highland.*[3]

In *Highland,* this Court addressed the requirements set forth in W.Va.Code, 49–5–16(b). We stated:

"A straightforward reading of West Virginia Code § 49–5–16(b) (Supp.1984) clearly indicates there are four prerequisites to a lawful transfer of an individual sentenced in adult court but initially committed to a juvenile facility. These are: (1) the transferee must be at least eighteen years of age; (2) the sentencing court must deem the transfer appropriate; (3) the Commissioner of Corrections must deem the transfer appropriate; and (4) the sentencing court must hold a hearing prior to the approved transfer to evaluate the individual's progress toward rehabilitation and consider modification of the originally imposed sentence." 174 W.Va. at 531, 327 S.E.2d at 708.

In this case, the first three requirements were met: the defendant had reached the age of eighteen and the sentencing court and the Commissioner of Corrections agreed to the transfer.[4] At a hearing held July 7, 1994, however, the circuit court noted on the rec-

---

**2.** At the plea agreement hearing, defense counsel stated his belief that the defendant had no real option but to plead in this case:

"At the end of—the completion of discovery and somewhere in the more than 100 hours of investigation, Your Honor, I could come to no factual defense that could be presented in this case. It became clear at that point to me that it was necessary to begin to negotiate with the State of West Virginia to achieve a plea. At that point I spent quite some time negotiating with the State attempting to achieve a plea. Frankly, I was surprised we were capable of achieving a plea in this particular case."

**3.** It is important to point out initially that this case does not concern ineffective assistance of counsel. The defendant does not present any issue regarding the quality of his legal representation at the time the plea bargain was agreed upon and accepted by the circuit court.

**4.** We note that the Legislature eliminated the third step of *Highland* when it deleted "the com-

missioner of the department of corrections and" from subsection (b) in its 1995 amendment of this statute. W.Va.Code, 49–5–16(b) (1995), states:

"No child who has been convicted of an offense under the adult jurisdiction of the circuit court shall be held in custody in a penitentiary of this state: Provided, That such child may be transferred from a secure juvenile facility to a penitentiary after he shall attain the age of eighteen years if, in the judgment of the court which committed such child, such transfer is appropriate: Provided, however, That any other provision of this code to the contrary notwithstanding, prior to such transfer the child shall be returned to the sentencing court for the purpose of reconsideration and modification of the imposed sentence, which shall be based upon a review of all records and relevant information relating to the child's rehabilitation since his conviction under the adult jurisdiction of the court."

Under the new statute, only the sentencing court need deem the transfer appropriate. This change does not affect our holding in this case.

ord it would not comply with step four of *Highland.* The circuit court refused to consider the defendant's rehabilitation efforts and refused to consider whether his sentence should be modified. The defendant's objection was noted and his attorney was permitted to vouch the record with certain evidence showing the defendant's rehabilitation efforts while at the youth facility.

The circuit court articulated two reasons for its decision to transfer the defendant to an adult penal institution without conducting the hearing. First, the circuit court stated that the language in W.Va.Code, 49–5–16(b), calling for reconsideration and modification of the defendant's sentence is in conflict with and repugnant to W.Va.Code, 61–2–2 (1965), which states that "Murder of the first degree shall be punished by confinement in the penitentiary for life." Second, the circuit court found the plea agreement barred it from considering the defendant's progress toward rehabilitation or the prospect of modifying his sentence.

The State argues the circuit court's ruling should be affirmed because it is undisputed that the defendant entered into the plea agreement knowingly and voluntarily. The State argues the record clearly shows the defendant was aware that he would be placed in the penitentiary following his eighteenth birthday and that he was never promised or mislead into believing he would serve the remainder of his sentence anywhere else. Therefore, it is asserted the defendant should be bound by the plea agreement and there is no requirement to consider his efforts at rehabilitation because the sentence should not be modified. It is further argued that in light of the plea agreement, there is no need to resort to statutory construction to resolve the alleged statutory conflict found by the circuit court between W.Va.Code, 61–2–2, the murder sentencing statute, and W.Va.Code, 49–5–16(b).

We agree with the defendant that W.Va.Code, 49–5–16(b), being a specific enactment dealing with the issue at hand, should control over the more general provision of the murder sentencing statute, W.Va. Code, 61–2–2. *See State ex rel. Simpkins v. Harvey,* 172 W.Va. 312, 305 S.E.2d 268 (1983). W.Va.Code, 49–5–16(b), states that "*any other provision of this Code to the contrary notwithstanding*" the defendant "shall be returned to the sentencing court for the purpose of reconsideration and modification of the imposed sentence" prior to his or her transfer to an adult penal institution. (Emphasis added). W.Va.Code, 61–2–2, is no more in conflict with W.Va.Code, 49–5–16(b), than is any other of our State's penal statutes. "Penal statutes invariably impose sentence in mandatory language.... Our probation statutes [and juvenile statutes] ameliorate such punitive sentences in favor of rehabilitation of the offender, the ultimate goal of our penal system. *See Cooper v. Gwinn,* [171 W.Va. 245, 298 S.E.2d 781 (1981)]." *State ex rel. Simpkins,* 172 W.Va. at 318, 305 S.E.2d at 275. (Citations omitted).

We now turn to the central issue in this case: Whether the particular circumstances of this case excuse the sentencing court from considering the defendant's efforts at rehabilitation in his attempts to seek sentence modification. Further, bearing in mind that the exceptional case may raise an exceptional concern, we note that this Court has never directly addressed this question.[5] At the time of the sentencing, the circuit court's options were limited by statute. The circuit court could have sentenced the defen-

---

**5.** There is some suggestion in the concurring opinion of Justice Neely in *Highland* that the hearing provision of W.Va.Code, 49–5–16(b), is not mandatory when the period of incarceration in the youth facility is so brief as to preclude providing the court with any reasonable information with which to make an intelligent and meaningful decision. Specifically, Justice Neely stated:

"The tone of the majority opinion implies that even the most heinous juvenile murderers, rapists, and armed robbers (who may have spent but three months in a youth center before they turn eighteen) should be treated similarly to juvenile misdemeanants who are presumed rehabilitated once they become adults. Since I doubt the majority would welcome such an inference, I would suggest that both the circuit courts and the commissioner interpret the statute as I have in this concurring opinion and require the issue to be brought back to this Court in an appropriate context for further clarification." 174 W.Va. at 532, 327 S.E.2d at 709.

dant only as provided for in W.Va.Code, 49–5–16(b). All other sentencing options were unavailable to the court either because the defendant was under the age of eighteen or stood convicted of a life imprisonment offense. Thus, there can be no reasonable dispute that the legality of the defendant's transfer to the penitentiary is controlled exclusively by W.Va.Code, 49–5–16(b). Again, despite the circuit court's scholarly reasoning, we find no tension between this Code section and W.Va.Code, 61–2–2.[6] On the date the defendant was sentenced, the circuit court had no authority under W.Va.Code, 49–5–16(b), to send the defendant directly to an adult penitentiary.

Finding that W.Va.Code, 49–5–16(b), controls does not end our inquiry. We must next determine whether the prerequisites of that statutory provision were violated. The defendant argues that a hearing under these circumstances was compelled by *Highland.* Although the defendant in *Highland* entered into a plea agreement in which he pleaded guilty to burglary and arson charges, the focus of our holding was that the Commissioner of Corrections and the sentencing court must both assent to the transfer to the adult penal institution before a pretransfer modification hearing is required.[7] That requirement lacking, we reversed the decision to transfer the defendant in *Highland* to an adult penal institution. As previously noted, the Commissioner of Corrections and the sentencing court in the case at hand have determined that the defendant's transfer to an adult institution is appropriate. As developed above, all prerequisites of *Highland* were met except the circuit court failed to conduct a formal hearing in this matter for the purpose of determining whether the sentence should be modified.

Although it might at first glance be difficult to perceive what benefit the defendant received from his guilty plea to first degree murder, in practical terms, he received the lesser sentence for first degree murder, *i.e.,* a life sentence with the possibility of parole in ten years. In exchange for this benefit, the State argues he gave up the opportunity for any sentencing reduction that may have been possible under W.Va.Code, 49–5–16(b). The record supports the State's position.

The jurisprudence of West Virginia is replete with instances in which juvenile waivers of significant constitutional and statutory rights were sanctioned by this Court. *See State v. Sugg,* 193 W.Va. 388, 456 S.E.2d 469 (1995); *State v. Laws,* 162 W.Va. 359, 251 S.E.2d 769 (1978). However, in *Sugg,* we stated that "[u]nder today's decision, a juvenile can make a voluntary, knowing, and intelligent waiver after he is properly apprised of his constitutional and statutory rights." 193 W.Va. at 398, 456 S.E.2d at 479. We concluded "the prosecution has a heavy burden in establishing that a waiver is knowing and intelligent" in cases dealing with juveniles. *Sugg,* 193 W.Va. at 398, 456 S.E.2d at 479.

We hold that the test for determining whether a departure from *Highland* and W.Va.Code, 49–5–16(b) (1982), is permitted is two-fold: (1) Was the particular circumstance (the basis for the proposed departure) adequately taken into consideration at the time the plea agreement was accepted by the circuit court; and (2) If it was, were the plea and the plea agreement a knowing and intelligent waiver of the rights provided by *Highland* and W.Va.Code, 49–5–16(b). Thus, the most important inquiry before this Court is whether there is evidence of a knowing and intelligent waiver.

---

6. "[C]ourts are not at liberty to pick and choose among ... [legislative] enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed ... [legislative] intention to the contrary, to regard each as effective. 'When there are two acts upon the same subject, the rule is to give effect to both if possible.... The intention of the legislature to repeal "must be clear and manifest." ' " *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290, 301 (1974), *quoting United States v. Borden Co.,* 308 U.S. 188, 198, 60 S.Ct.

182, 188, 84 L.Ed. 181, 190–91 (1939). We simply cannot conclude from the language of the statutes that the Legislature consciously abandoned its policy of having juveniles who are adjudicated in adult court sentenced pursuant to the dictates of W.Va.Code, 49–5–16(b).

7. See note 4, *supra,* for a discussion of statutory changes which now supersede that portion of our holding in *Highland.*

This more structured inquiry—focusing on the most important, indeed, the determinative factors in all our decisions to date—will both conserve the resources of the bench and provide better guidance to the bar, and we adopt it today as the presumptive framework for analyzing a circuit court's denial of a hearing under W.Va.Code, 49–5–16(b). This inquiry will conserve resources because the circuit court will not need exhaustively to examine all aspects of rehabilitation issues in every case. This sequential inquiry will properly focus the efforts of defense counsel and the prosecution upon the key issue raised on the appeal of an order denying a hearing under *Highland:* Has a defendant by his plea agreement knowingly and voluntarily waived his right to have the court determine at a later time whether to modify his sentence?

▆ In the instant case, we feel comfortable accepting the circuit court's finding of waiver for two reasons. First, the parties themselves agree that all waivers were intelligent and voluntary. Indeed, defense counsel states in his brief to this Court:

"On November 12, 1993, the Court exhaustively advised the defendant of his rights and made extensive inquiry into the defendant's understanding of his rights and of the terms of the plea agreement. An express finding was made that the defendant understood all of his rights and desired to enter into the plea agreement knowingly, intelligently, and voluntarily with full knowledge of the consequences. The Court thereupon accepted the plea agreement and the plea of Sean Harris of Guilty to murder in the first degree."

Second, in order to discharge our constitutional obligation to the parties in this action, we, too, have undertaken an extensive examination of the record. In doing so, we give much significance to the fact that on November 12, 1993, the defendant completed and submitted to the circuit court a written petition to enter a guilty plea. In answering question no. 5, the defendant expressly stated that he knew and understood the punishment to be imposed after pleading guilty to first degree murder was life imprisonment in the penitentiary with possibility of parole after ten years. Moreover, at the time the guilty plea was being discussed in open court pursuant to Rule 11 of the West Virginia Rules of Criminal Procedure, the court made sure the defendant understood that he would be serving his sentence in an adult facility, with the possibility of parole only after ten years. When asked by the court if he had any questions regarding that aspect of the sentence, the defendant replied: "No, sir." [8] Based on the record as a whole we can find no reason to question the voluntariness of the plea agreement and its bargain for predicate.

Once the State and the circuit court complied with their obligations under the plea agreement, the defendant contractually was bound to the agreement. *See State ex rel. Brewer v. Starcher,* 195 W.Va. 185, 195, 465 S.E.2d 185, 195 (1995) ("[a] circuit court not only must insure the agreement is under-

8. The circuit court's comments in this regard were:

"THE COURT: All right. Then the key provision then is paragraph five. Paragraph five says that the State of West Virginia agrees that the appropriate disposition in this matter is that Sean Harris be sentenced to incarceration in the West Virginia Penitentiary for life with the recommendation of mercy. Sean Harris acknowledges that he has been advised and understands that he will only be eligible for parole under a sentence of life imprisonment with a recommendation of mercy after serving ten years of actual incarceration and that parole is a matter of grace, not a right. That is to say that Sean Harris understands that he will have the right to request parole of the Board of Parole after serving ten years of actual incarceration, but that the Board of Parole is not required to place him on parole and that no one can predict whether or not the Board of Parole will place him on parole.

"All right, Sean, let's make sure that you understand exactly what that says. It says, first of all, that you will have to serve the rest of your life in the West Virginia Penitentiary with a recommendation of mercy. And then it goes on to say what a recommendation of mercy means. And it states that you know that you cannot even attempt to get out of prison until you have served at least ten years in the penitentiary system, that even though you request to be released from the penitentiary after ten years, that does not mean that you will be released, that that decision will be made by the people who are on the Board of Parole, that it's conceivable that they would never release you from prison.

"Any question at all about what that means?

"THE DEFENDANT: No, sir."

stood by a defendant, but has an equal obligation to satisfy itself that the terms of the agreement are adhered to by both sides, as well as the court itself"). The defendant was represented presumptively by an effective and adequate attorney. *See State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995). The plea agreement contained no provision that the sentence could be renegotiated or modified at a later time or that the defendant could be relieved of the consequences of his plea. The parties could very well have struck a different agreement, but permitting the State to receive the benefit of its judicially accepted plea agreement is not a violation of West Virginia law. *See Ricketts v. Adamson,* 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987). To adopt a contrary rule would be totally destructive to the role of plea bargaining in the criminal justice system.

■ Although we have concluded that the circuit court's enforcement of the plea agreement was not erroneous, we consider alternatively whether the failure to hold a hearing, even if viewed as error, is harmless. It might be reasonable to take a different view of this case, if we found there was now available new information regarding the rehabilitative prospects of the defendant that was not considered by the circuit court at the time it accepted the guilty plea and imposed sentence.[9] In *Highland,* this Court made it clear that the circuit court may not reject a request to modify a sentence based solely upon the seriousness of the offense. We specifically stated: "In reconsideration of a previously imposed sentence, the court should not, in the face of clear evidence of rehabilitative progress, arbitrarily place undue emphasis upon the nature of the offense committed." 174 W.Va. at 530 n. 3, 327 S.E.2d at 707–08 n. 3. Again, our review of the record indicates that all experts and juvenile authorities believed that the eight months the defendant was confined, while awaiting transfer to an adult institution, were insufficient to permit rehabilitation. Under *Highland,* these findings and recommendations are to be carefully scrutinized and given substantial weight on this subject. 174

W.Va. at 530, 327 S.E.2d at 707–08. The import of these findings and recommendations was acknowledged by defense counsel at the July 7, 1994, hearing:

"The consistent conclusion of all of the examiners was that rehabilitation in Mr. Harris' case would take quite some time and that, probably in the opinion of Dr. Hewitt, would take more time than would be available in the two years between Mr. Harris turning 18 and Mr. Harris turning 20."

To be sure, this is a high-stakes dispute, but that fact, in and of itself, does not warrant handcuffing the circuit court. Matters of great consequence are often decided without a hearing, especially when the taking of live testimony would contribute nothing material to the controlling issue at hand.

■ We hold that except in specific, well-defined circumstances, a pretransfer hearing pursuant to W.Va.Code, 49–5–16(b), is not necessary when all the significant information is already in the breast of the circuit court and there is no significant dispute between the parties as to the accuracy and relevancy of the information. In the last analysis what counts is not the prize at stake, but whether the parties receive that to which the statute entitles them. Technically, the hearing mandated under *Highland* was denied, but there is relatively little risk that the omission resulted in the miscarriage of justice engendered by the defendant being sent to an adult penitentiary. Under the facts of this case, the transfer to an adult penitentiary was inevitable.

For the foregoing reasons, the judgment of the Circuit Court of Hancock County is affirmed.

Affirmed.

MILLER, Retired Justice, sitting by temporary assignment.

ALBRIGHT, J., did not participate.

---

9. The State also argues that because the defendant vouched the record, the requirements of the statute are met. However, the circuit court clearly stated it was not considering any rehabilitation efforts and not considering sentence modification.