531 S.E.2d 324

STATE of West Virginia, Plaintiff
Below, Appellee,

v.

Stephen HAYHURST, Defendant
Below, Appellant.

No. 26564.

Supreme Court of Appeals of
West Virginia.

Submitted March 22, 2000.

Decided April 26, 2000.

Pamela Jean Games–Neely, Esquire, Prosecuting Attorney, Christopher Quasebarth, Esquire, Assistant Prosecuting Attorney, Martinsburg, West Virginia, Attorneys for Appellee.

Kevin D. Mills, Esquire, Martinsburg, West Virginia, Attorneys for Appellant.

PER CURIAM:

This is an appeal by Stephen Hayhurst (hereinafter "Appellant") from an order of the Circuit Court of Berkeley County sentencing the Appellant to twenty years in the West Virginia State Penitentiary for aggravated robbery. The Appellant maintains that the lower court erred by failing to conduct an evidentiary hearing prior to transferring him from a juvenile facility to the state penitentiary. We reverse and remand for an evidentiary hearing consistent with this opinion.

## I. Facts

On October 6, 1997, at the age of seventeen, the Appellant committed an aggravated robbery at a convenience store. The Appellant placed a ski mask over his face, seized an elderly female customer, placed a knife to her throat, and demanded money from the store's employees. The Appellant was apprehended, and on October 17, 1997, the State filed a motion to transfer the Appellant from the juvenile jurisdiction to the adult jurisdiction of the court. On October 24, 1997, one day after the Appellant's eighteenth birthday, the lower court granted the State's motion for the transfer.

The Appellant thereafter waived his right to be prosecuted by presentment of charges to the grand jury and agreed to be prosecuted upon an information. During an April 3, 1998, hearing, the State presented a plea agreement to the lower court. The State, when questioned by the lower court regarding the plea agreement, explained as follows:

> Mr. Hayhurst will be pleading guilty to the charge of aggravated robbery. The recommendation in this case is for six months to two years at the Anthony Center with five years probation following it. However, if he fails to comply or complete either the program in the Anthony Center or the

program of probation that would come after that, the recommended sentence in this case is 20 years in the penitentiary.

The lower court then presented the following question to the State:

> Is the 20 years also a cap in terms of, because, you know, whether the court utilizes the Anthony Center and even if the defendant is successful in the Anthony Center, a stay at the Anthony Center will be followed by a sentence, and the court always imposes a penal sentence before probation.

The State answered, "Yes, sir," and explained that the twenty year sentence "is a cap, that is the sentence if he fails to comply with all the terms and conditions, and that would be the recommended sentence...."

During that April 3, 1998, hearing, the lower court also questioned the Appellant regarding his understanding of the plea agreement[1] and explained to the Appellant that "[a]nother important thing for you to understand is that if a person—people are returned from the Anthony Center from time to time as being unfit or not succeeding in their program, and when that happens, then we sentence them in most events to the penitentiary." The plea agreement was not reduced to writing.

On April 7, 1998, an order of conviction was entered, signed by the lower court but not initialed by counsel for either party. That order provided in pertinent part as follows:

The terms of the plea agreement are that in return for the Defendant's plea of guilty, the State will agree to a binding disposition of placement at the Anthony Center and a twenty years suspended sentence upon successful completion. The further understanding is that should the Defendant fail to successful complete the Anthony Center program, he will be sentenced to twenty years of incarceration in the State Penitentiary.

The lower court entered a conditional sentencing[2] order, signed by the lower court and initialed by counsel for both parties, on April 30, 1998. The April 30, 1998, order does not contain language specifically referencing the twenty years in the penitentiary; it does, however, reference the binding plea agreement of April 3, 1998. Specifically, the conditional sentencing order provides that "the Court was informed that a plea agreement had been reached and the terms of the binding plea were set forth on the record...."[3] The conditional sentencing order of April 30, 1998, also states as follows:

> Wherefore, it is the order of this court that the defendant be placed at the Anthony Center for a period of six months to two years to complete their program. After the successful completion of the Anthony Center program he shall return to this Court for sentencing. It is the further order of this Court that the defendant be committed to the custody of the Commissioner of the West Virginia Department of

---

1. The lower court, during the recitation of facts to be properly understood by the Appellant, did not refer to an automatic twenty year sentence and instead simply explained as follows:

   > [T]he prosecutor is recommending, to us what is known as a binding plea agreement. In other words, it's a form of contract where you and your attorney and the State have entered into an agreement that you will enter a plea of guilty to a certain charge and in return you can rest upon an expectation that the court will sentence you in a particular way.

   The lower court explained:
   > [i]f the court can agree to the recommendations of the State to the Anthony Center, you would not at that time be sentenced but would be sentenced to the Anthony Center for their period of treatment, which is I think not less than six months nor more than two years....

2. The sentencing order was conditional upon a satisfactory presentence investigation report.

3. The Appellant emphasizes that the order entered on April 7, 1998, and the order entered on April 30, 1998, differ substantially with regard to the twenty year penitentiary sentence. The April 7, 1998, order contains specific language regarding the twenty years of incarceration in the penitentiary while the April 30, 1998, order only references the April 3, 1998, binding plea agreement and does not specifically impose a definitive twenty year sentence in the event the Appellant were to fail at the Anthony Center. The Appellant further accentuates that only the April 30, 1998, order was initialed by counsel for both parties and presumably represents the lower court's most accurate statement on the issue of the twenty year incarceration.

Corrections for placement at the Anthony Center.

Subsequent to the receipt of the presentence report, the lower court conducted another hearing on May 22, 1998. In summarizing the proceedings to date, the lower court reiterated the events of the plea hearing as follows:

This matter was the subject of a binding plea on the 3rd of April of 1998 at which time the Defendant entered a plea of guilty to the offense of aggravated robbery and there was a binding disposition wherein the State agreed with counsel for the Defendant that given the Defendant's youth and his apparent lack of any significant criminal history that a confinement at the Division of Corrections Center for Youthful Offenders would be appropriate from six months to two years after which the Defendant could be returned to this Court for further sentencing in accordance with the dictates of the law.

The lower court, during the May 22, 1998, hearing, apprised the Appellant as follows:

[R]ather than going through the formal sentencing ceremony, the articulation of sentence here today, that we will instead refer you to the Commissioner of the Department of Corrections and you will be taken into the custody of corrections to the Center for Youthful Offenders and you will be housed there and treated with their program for a period of time which would be not less than six months nor more than two years based upon your performance in that program and you will be returned to this Court for further sentencing.

The lower court advised the Appellant that he would receive probation if successful at the Anthony Center. The lower court further forewarned the Appellant as follows:

[I]t is also possible to wash out at the Anthony Center. If a person is rejected as being unsuitable for the program, they also are returned to the Court for further sentencing but the further sentencing, then would be in all probability and likelihood a sentence to the State Penitentiary. As you are probably well aware, the minimum sentence to the State Penitentiary for aggravated robbery is ten years.

The State, when offered the opportunity to address the remarks of the lower court or raise additional concerns, failed to challenge the lower court's characterization of the plea arrangements and made no attempt to indicate that a twenty year sentence was to be automatically imposed upon failure to successfully complete the program at the Anthony Center.

On May 27, 1998, the lower court ordered the Appellant to home confinement while awaiting his transfer to Anthony Center. The Appellant entered the Anthony Center on September 16, 1998, and was engaged in a physical altercation with another juvenile resident on September 25, 1998. A disciplinary hearing was conducted at Anthony Center on October 5, 1998, regarding the Appellant's alleged involvement in the September 25, 1998, incident. The evidence presented at that hearing indicated that the Appellant and the other resident had engaged in fighting. Both residents had red marks on their faces, scratches and abrasions. The Appellant admitted that he and the other resident had been "playing around" but stated that he did not feel that the activity warranted a fighting charge. As a result of this fighting charge, the Appellant was placed on probation within the Anthony Center until November 5, 1998, and suffered a loss of all privileges from October 12, 1998, through October 25, 1998.

On October 10, 1998, the Appellant was involved in a second physical altercation with a different juvenile resident. During this skirmish, the other juvenile suffered a broken jaw. On October 13, 1998, the Appellant was returned to the lower court for the alleged commission of two separate infractions, a Class I disciplinary violation (fighting) and a Class II disciplinary violation (assaulting another resident), including breaking the jaw of another juvenile at Anthony Center. A disciplinary hearing regarding the October 10, 1998, altercation was conducted on November 5, 1998, at the Eastern Regional Jail in which the Appellant was being held.

The Appellant appeared before the lower court on January 29, 1999, and was sentenced to twenty years in the state peniten-

tiary. The lower court based this determination upon the allegedly binding plea agreement which purportedly required a twenty year sentence to be immediately imposed upon failure at the Anthony Center. The lower court did not conduct a hearing and relied upon two letters from the warden of Anthony Center stating that the Appellant had committed the violations. The Appellant was not provided with the opportunity to develop additional facts or circumstances surrounding the incidents at the Anthony Center. The Appellant subsequently appealed the lower court's decision to this Court.

## II. Discussion

The Appellant contends that a defendant, upon being returned to the lower court from a juvenile offenders facility, is entitled to an evidentiary hearing before the sentencing judge even if that defendant had previously entered into a plea agreement which set forth the sentence to be imposed upon the defendant in the event that he failed to successfully complete the juvenile offenders program. The Appellant also alleges that the circumstances surrounding the entry of the plea cast doubt upon the binding nature of the portion of the alleged agreement which mandated a twenty year prison sentence upon failure at the Anthony Center.

### A. The Transfer from the Juvenile Facility

■ The Appellant's contentions create two separate questions for resolution by this Court. The facile matter is that the lower court erred in failing to conduct an evidentiary hearing on the issue of the Appellant's unfitness to remain in the Anthony Center. The State concedes that the lower court erred on this issue. In syllabus point two of *Watson v. Whyte*, 162 W.Va. 26, 245 S.E.2d 916 (1978), this Court stated as follows:

A youthful male offender, sentenced to confinement in a special center pursuant to W.Va.Code, 25–4–6, is entitled to an evidentiary hearing when he is returned, as

unfit, to the sentencing court and faces resentencing to the penitentiary; and he is entitled to counsel to assist him in the hearing before the sentencing court.

In *Watson*, this Court also discussed the minimum due process requirements applicable to the transfer[4] proceeding and specified the following requirements:

(a) written notice of the claimed violations...; (b) disclosure ... of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body ...; and (f) a written statement by the fact finders as to the evidence called on and reasons for ... [the transfer].

162 W.Va. at 32, 245 S.E.2d at 920 (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); and *Louk v. Haynes*, 159 W.Va. 482, 223 S.E.2d 780 (1976)).

■ In *State v. Anderson*, 178 W.Va. 348, 359 S.E.2d 576 (1987), this Court explained that an institutional hearing held in the juvenile facility is not a sufficient replacement for a transfer hearing to be held in circuit court.

[I]nstitutional hearings are not transfer hearings, but are disciplinary hearings and concerned with single incidents. *The question in disciplinary hearings is not whether the defendant is fit to remain in the Center, but whether disciplinary violations have occurred. The hearing before the circuit court is the hearing conducted for the purpose of determining whether the youthful offender is fit to remain in the youthful center. It is the hearing at which the overall effect of all disciplinary violations is considered, and it is the proceeding at which there is a determination of whether the totality of a defendant's mis-*

---

**4.** Although the term "transfer" is utilized to describe the repositioning of a child from juvenile jurisdiction to adult jurisdiction, this Court has used the term "transfer" when referencing the evidentiary hearing required upon relocation from a juvenile facility to the penitentiary. To avoid confusion, we clarify that we are using the term "transfer" in this opinion to identify the procedural process of moving an offender from a juvenile facility to the state penitentiary for adults.

*conduct renders him unfit to remain at the Center.*

*Id.* at 351, 359 S.E.2d at 579 (emphasis added).

Consequently, based upon the foregoing precedent and the State's concession of error by the lower court, an evidentiary hearing to determine whether the Appellant is fit to remain in the Anthony Center must be conducted upon remand.

### B. Reconsideration and Potential Modification

The more complex matter, however, is the scope of the hearing to be conducted on remand. While the State concedes that the lower court erred in failing to conduct an evidentiary hearing concerning the Appellant's transfer from Anthony Center to the penitentiary, the State argues that the hearing on remand should be limited to inquiry regarding whether the violations sufficiently demonstrate the Appellant's unfitness for the Anthony Center.

An additional statutory directive, however, articulated in West Virginia Code § 49–5–16(b) (1999), compels further examination:

> No child who has been convicted of an offense under the adult jurisdiction of the circuit court shall be held in custody in a penitentiary of this state: Provided, That such child may be transferred from a secure juvenile facility to a penitentiary after he shall attain the age of eighteen years if, in the judgment of the court which committed such child, such transfer is appropriate: Provided, however, That any other provision of this code to the contrary notwithstanding, prior to such transfer the child shall be returned to the sentencing court for the purpose of reconsideration and modification of the imposed sentence, which shall be based upon a review of all records and relevant information relating to the child's rehabilitation since his conviction under the adult jurisdiction of the court.

In *State v. Highland,* 174 W.Va. 525, 327 S.E.2d 703 (1985), this Court examined West Virginia Code § 49–5–16(b) and recognized that "the transfer decision and the modification decision are distinctly separate matters." 174 W.Va. at 529, 327 S.E.2d at 706. "The 1982 provision relating to reconsideration and modification of a sentence only becomes applicable where a transfer is to take place, and has no direct relevance to the question of the appropriateness of the transfer." *Id.* at 529, 327 S.E.2d at 707. "The sole object of the amendment was a requirement for pretransfer hearings to *reconsider* already imposed sentences." *Id.* at 530, 327 S.E.2d at 708 n. 5.

*Highland* specified the "prerequisites to a lawful transfer of an individual sentenced in adult court but initially committed to a juvenile facility." 174 W.Va. at 531, 327 S.E.2d at 708.[5] This Court explained that "the sentencing court must hold a hearing prior to the approved transfer to evaluate the individual's progress toward rehabilitation and consider modification of the originally imposed sentence." *Id.* In addressing issues of possible reconsideration and modification of the sentence, the lower court "is obligated to make specific findings upon the record which relate its final decision to the weight accorded 'all records and relevant information relating to the child's rehabilitation since his conviction under the adult jurisdiction of the court.' West Virginia Code § 49–5–16(b) (1984 Supp.)." *Id.* at 530, 327 S.E.2d at 708.

■ In *State v. Harris,* 195 W.Va. 43, 464 S.E.2d 363 (1995), the defendant had been confined to a juvenile facility after pleading guilty to first-degree murder. Upon attaining the age of eighteen, the lower court had ordered a transfer to the state penitentiary. The defendant thereafter appealed the denial of a pretransfer hearing, and this Court held that under certain circumstances, a juvenile may waive rights provided by the statutes governing transfers of juveniles to peniten-

---

5. The version of the statute applicable in *Highland* provided that both the Commissioner of the Department of Corrections and the lower court had to agree upon the appropriateness of the transfer to the penitentiary. *See* 174 W.Va. at 531, 327 S.E.2d at 708. In its 1995 amendment to the statute, the Legislature eliminated the necessity for the involvement of the commissioner and placed the transfer decision solely in the discretion of the lower court. That alteration has no effect upon the matter before the Court in the present case.

tiaries and that the defendant was bound by the waiver of his rights in his plea agreement. *Id.* at 50, 464 S.E.2d at 370.

In syllabus point one of *Harris,* this Court addressed the standards enunciated by *Highland* and held that a deviation from such requirements may be justified under certain limited circumstances:

> The test for determining whether a departure from *State v. Highland,* 174 W.Va. 525, 327 S.E.2d 703 (1985), and W.Va.Code, 49–5–16(b) (1982), is permitted is two-fold: (1) Was the particular circumstance (the basis for the proposed departure) adequately taken into consideration at the time the plea agreement was accepted by the circuit court; and (2) If it was, were the plea and the plea agreement a knowing and intelligent waiver of the rights provided by *Highland* and W.Va.Code, 49–5–16(b). Thus, the most important inquiry is whether there is evidence of a knowing and intelligent waiver.

This Court reasoned in *Harris:*

> [t]his sequential inquiry will properly focus the efforts of defense counsel and the prosecution upon the key issue raised on the appeal of an order denying a hearing under *Highland:* Has a defendant by his plea agreement knowingly and voluntarily waived his right to have the court determine at a later time whether to modify his sentence?

195 W.Va. at 49, 464 S.E.2d at 369.

Applying that analysis to the *Harris* factual scenario, this Court emphasized the defendant's understanding that he would serve a life sentence in the penitentiary pursuant to his plea agreement. In answering questions concerning his plea agreement, the defendant in *Harris* had stated that he understood that "the punishment to be imposed after pleading guilty to first-degree murder was life imprisonment in the penitentiary with possibility of parole after ten years." *Id.* In finding that the defendant had waived his right

to a pre-transfer hearing, this Court explained:

> Considering the unique circumstances of this case, we hold the provision of W.Va. Code, 49–5–16(b), providing for a hearing to determine the rehabilitation status of a juvenile can be waived if the waiver is voluntary and intelligent and if an evidentiary hearing would serve no useful purpose as contemplated under *Highland.*

195 W.Va. at 46, 464 S.E.2d at 366.

■ In the present case, however, the Appellant contends that he was not properly apprised that the twenty year sentence would be imposed automatically upon failure in the Anthony Center and did not intend to execute a waiver of his statutory rights through his plea agreement. While the State maintains that the plea agreement was understood by the Appellant and the Appellant's attorney during the original hearings, the Appellant raises concerns regarding his understanding of the proposals during the plea hearings and the clarity of the resulting orders generated in the lower court.

Focusing upon the *Harris* formula for determining whether departure from *Highland* and the statutory requirements is justified, this Court must determine whether the basis for the proposed departure was adequately taken into consideration at the time the plea agreement was accepted by the lower court and if so, was the plea a knowing and intelligent waiver of the rights provided by the statute and *Highland.* As framed by this Court in *Harris,* "[h]as a defendant by his plea agreement knowingly and voluntarily waived his right to have the court determine at a later time whether to modify his sentence?" 195 W.Va. at 49, 464 S.E.2d at 369.

■ Based upon the facts of the present case and a thorough review of the transcripts of the hearings, we find that the Appellant did not knowingly waive his right to the protections afforded by West Virginia Code § 49–5–16(b) and *Highland.*[6] With the pos-

---

**6.** In syllabus point two of *Harris,* this Court explained:

> Except in specific, well-defined circumstances, a pretransfer hearing pursuant to W.Va.Code, 49–5–16(b) (1982), is not neces-

sary when all the significant information is already in the breast of the circuit court and there is no significant dispute between the parties as to the accuracy and relevancy of the information.

sible exception of the April 7, 1998, order, no order or transcript specifically informed the Appellant that he would automatically be sentenced to twenty years in the penitentiary upon default in the Anthony Center program. The twenty year penitentiary sentence was repeatedly referenced as a "recommendation" of the State or a "cap" on the possible sentence to be imposed. In the later hearings, the twenty year sentence was not even discussed, and the Appellant was informed only of the possibility of a penitentiary sentence if his Anthony Center venture proved unsuccessful. The final sentencing hearing of May 22, 1998, contained a direct admonition to the Appellant by the lower court that a rejection as being "unsuitable for the [Anthony] program" would result "in all probability and likelihood [in] a sentence to the State Penitentiary." The lower court even advised the Appellant that the "minimum sentence to the State Penitentiary for aggravated robbery is ten years." Obviously, an automatic imposition of a twenty year penitentiary sentence was not within the contemplation of the lower court and the State at that juncture.[7]

When the Appellant was returned to the lower court in January 1999, the case was not handled by the judge who had presided over the sentencing phase, and counsel for the Appellant had also changed. Thus, the State was bestowed broad latitude in explaining the prior proceedings to the presiding judge. Even within that January 1999 hearing, the twenty year sentence was first referenced by the State as a "cap" and was later expressed as a definite sentence of twenty years. Upon this Court's review of the record and the progression of proceedings culminating in the treatment of the twenty year sentence as definitive and automatic, we find that the Appellant did not knowingly enter into[8] a plea agreement which would result in the immediate imposition of a twenty year penitentiary sentence upon failure at the Anthony Center, never acknowledged an understanding of his rights to a transfer hearing, and, clearly, never waived his right to such hearing. According to transcripts of the pertinent proceedings, such result was not within the contemplation of the lower court during sentencing and was never mentioned to the Appellant at that critical moment.

Based upon the foregoing, we remand this case to the lower court with directions to conduct an evidentiary hearing pursuant to the requirements of *Watson* and *Anderson* to determine whether the Appellant is fit to remain in the Anthony Center. Further,

195 W.Va. at 44, 464 S.E.2d at 364, Syl. Pt. 2. In the present case, the information essential to an informed decision was not agreed upon and there were significant disputes in existence between the parties. Thus, the acknowledgment in syllabus point two of *Harris* that pretransfer hearings are not always necessary is not applicable to this case.

7. In *State ex rel. Forbes v. Kaufman*, 185 W.Va. 72, 404 S.E.2d 763 (1991), this Court consulted the reasoning of the Fourth Circuit Court of Appeals in *United States v. Harvey*, 791 F.2d 294 (4th Cir.1986), regarding the effect of imprecise plea agreements. 185 W.Va. at 77, 404 S.E.2d at 768. The Fourth Circuit in *Harvey* held that "both constitutional and supervisory concerns require holding the Government to a greater degree of responsibility than the defendant ... for imprecisions or ambiguities in plea agreements." 791 F.2d at 300. In *Kaufman*, we explained that we agreed with the Fourth Circuit observation

that the state must insure that the terms of a plea agreement are clear and exact. The defendant waives significant constitutional rights by entering into a plea agreement, such as the right to examine and confront witnesses who

would testify against the defendant, the privilege against compulsory self-incrimination, the presumption of innocence, and the right to a speedy trial.
185 W.Va. at 77, 404 S.E.2d at 768. We concluded in *Kaufman* "that a defendant's waiver of his or her constitutional rights outweighs the state's foregoing of its right to prosecute." *Id.* "[T]he state bears the primary responsibility for insuring precision and unambiguity in a plea agreement because of the significant constitutional rights the defendant waives by entering a guilty plea. If a plea agreement is imprecise or ambiguous, such imprecision or ambiguity will be construed in favor of the defendant." *Id.*

8. In *State ex rel. Yeager v. Trent*, 203 W.Va. 716, 510 S.E.2d 790 (1998), this Court strongly advised that reduction of plea agreements to writing is the preferable approach. "This entire scenario illustrates why, although there is no rule requiring that plea agreements be in writing, it clearly is the better practice." 203 W.Va. at 721, 510 S.E.2d at 795. Had the intricacies of this plea agreement been thoroughly contemplated and concisely drafted in writing, the difficulties encountered by the litigants in the present case would have been avoided.

pursuant to the mandates of *Highland* and West Virginia Code § 49–5–16(b), if transfer from the Anthony Center is deemed necessary, the lower court must include within the hearing an evaluation of the Appellant's progress toward rehabilitation and a consideration of potential modification of the Appellant's sentence.

Reversed and remanded with directions.