496 S.E.2d 887

STATE of West Virginia, Plaintiff Below, Appellee,

v.

ROBERT K. McL., Infant Respondent, Appellant.

No. 23951.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 17, 1997.

Decided Oct. 24, 1997.

Darrell V. McGraw, Jr., Attorney General, Rory L. Perry, II, Assistant Attorney General, Charleston, for Appellee.

David A. Eustis, Assistant Public Defender, Fayetteville, for Appellant.

STARCHER, Justice:

The Circuit Court of Fayette County transferred the appellant, Robert K. McL., a 15–year–old, to the adult criminal jurisdiction of the court. The appellant argues that the "automatic transfer" provisions of the juvenile transfer statute violate his constitutional rights. Noting that there is a specific statutory provision that authorizes the circuit court to return the appellant to the court's juvenile jurisdiction if the juvenile is convicted as an adult, we find that the "automatic transfer" statute does not operate to violate the appellant's constitutional rights. We affirm the judgment of the circuit court.

## I.

### Facts and Background

On February 14, 1996, the prosecuting attorney of Fayette County made a motion in the circuit court of Fayette County, pursuant to the provisions of *W.Va.Code*, 49–5–10(d) [1995],[1] to transfer the juvenile appellant, Robert K. McL., to the court's adult criminal jurisdiction. The appellant had been previously arrested and charged with killing his mother. At the time of the alleged offense, the appellant was 15 years old.

A transfer hearing was held before the circuit court on August 9, 1996. On August 15, 1996, the circuit court entered an order finding that there was probable cause to believe that the appellant committed the crime of murder. Pursuant to that finding, the circuit court ordered that the appellant be transferred to the criminal jurisdiction of the circuit court to stand trial as an adult.

The circuit court entered a separate order denying several motions made by the appellant, including the appellant's motion to declare *W.Va.Code*, 49–5–10(d) [1995] unconstitutional. On October 18, 1996, the appellant filed an interlocutory petition for appeal pursuant to *W.Va.Code*, 49–5–10(j) [1995].[2]

The appellant does not contest the circuit court's finding of probable cause to believe that the appellant had committed the crime of murder. The appellant's principal contention in the instant case is that the "automatic transfer" provisions of *W.Va.Code*, 49–5–10(d) [1995] violate the guarantees of equal protection and due process contained in Article III, Section 10 of the *West Virginia Constitution* and the Fifth and Fourteenth Amendments of the *United States Constitution*.

The pertinent parts of *W.Va.Code*, 49–5–10 [1995] stated (with emphasis added):

(a) Upon written motion of the prosecuting attorney filed at least eight days prior to the adjudicatory hearing . . . the court shall conduct a hearing to determine if juvenile jurisdiction should or must be waived and the proceeding transferred to the criminal jurisdiction of the court. . . .

(d) The court *shall* transfer a juvenile proceeding to criminal jurisdiction if there is probable cause to believe that:

(1) The child is at least fourteen years of age and has committed the crime of treason . . . the crime of murder . . . the crime of robbery involving the use or presenting of firearms or other deadly weapons . . . the crime of kidnaping . . . the crime of first degree arson . . . or the crime of sexual assault in the first degree . . . or

(2) The child is at least fourteen years of age and has committed an offense of violence to the person which would be a felony if the child were an adult: Provided, That the child has been previously adjudged delinquent for the commission of an offense of violence to the person which would be a felony if the child were an adult; or

(3) The child is at least fourteen years of age and has committed an offense which would be a felony if the child were an adult: Provided, That the child has been twice previously adjudged delinquent for the commission of an offense which would be a felony if the child were an adult.

The most notable word in this statutory language, for purposes of the instant appeal, is found in the first sentence of subsection (d): "The court *shall* transfer a juvenile proceeding to criminal jurisdiction if there is probable cause to believe . . .", etc. (Emphasis added.) In 1995 this statute was amended, and the word "may" in the previous version of the statute was replaced with the "*shall* transfer" language quoted above.

---

1. This statute was amended in 1996 and 1997 in a fashion that is not directly pertinent to the principal issue in this appeal, because the 1995 statutory language at issue in this appeal was unchanged. However, because the statute governing the appellant's case is the 1995 version (due to the date of the appellant's alleged offense), this opinion will reference the 1995 statute.

2. *W.Va.Code*, 49–5–10(j) [1995] was amended in 1997 to remove language authorizing interlocutory appeals of transfers made pursuant to the "automatic transfer" provisions of *W.Va.Code*, 49–5–10(d)(1) [1995].

The 1995 amendment also removed language which authorized a court to consider personal or individual factors about a juvenile where there is probable cause to believe that the juvenile committed one of the enumerated serious offenses. These personal factors go to the suitability or "amenability" of the juvenile for the rehabilitative purposes of the circuit court's juvenile jurisdiction, and include a juvenile's mental and physical condition, maturity, emotional attitude, home or family environment, school experience and similar personal factors. *See W.Va.Code*, 49–5–10(g) [1997].

■ The appellant's challenge to the constitutionality of this 1995 statutory language change provides the principal basis for the instant appeal.[3]

## II.

### *Discussion*

We have not confronted the issue of non-discretionary, "automatic" transfer of a juvenile to adult jurisdiction before.

However, we have previously found that a circuit court is not *required* in the exercise of its discretion to consider personal factors, when presented with probable cause that a juvenile has committed a statutorily enumerated offense.

In *State ex rel. Cook v. Helms,* 170 W.Va. 200, 202–203, 292 S.E.2d 610, 612–613 (1981), this Court held that under the 1978 amendments to *W.Va.Code,* 49–5–10 [1978], when a juvenile court is considering a motion to transfer a juvenile charged with an enumerated crime,

> ... transfer *may* be ordered solely on a finding of probable cause to believe that the child committed any one of those enumerated crimes ... *[but] the statute does not preclude a trial court judge from considering evidence about the child's 'personal factors,' even in circumstances where the child is accused of the enumerated serious crimes.* [And] [*t*]*he trial court may still determine to treat a child under the juvenile laws, even where serious*

*crimes are committed, if the court believes such treatment is warranted.* (Emphasis added).

■ In the instant case we are faced with a change in statutory language that diverges substantially from the standards and procedures set forth in *Cook.* The 1995 statutory language (1) removes the circuit court's statutory authorization to consider personal factors, and (2) makes any consideration of personal factors (whether by statutory authorization or not) irrelevant—because transfer to adult jurisdiction is automatic upon a finding of probable cause.

The issue presented by this substantial statutory change is whether divesting and depriving a circuit court of the ability to consider personal and other factors going to the suitability and amenability of a juvenile for the circuit court's juvenile jurisdiction—and effectively assigning solely to the prosecuting attorney the task of deciding which individuals of a class of juveniles will be transferred to adult jurisdiction—runs afoul of the constitutional guarantees of equal protection and due process of law.

In considering this issue, we first note that the United States Supreme Court enunciated the rationale for juvenile transfer statutes in *Breed v. Jones,* 421 U.S. 519, 535, 95 S.Ct. 1779, 1788–1789, 44 L.Ed.2d 346, 359 (1975).

> [T]here appears to be widely shared agreement that not all juveniles can benefit from the special features and programs of the juvenile-court system and that a procedure for transfer to an adult court should be available.... [S]uch transfer provisions represent an attempt to impart to the juvenile-court system the flexibility needed to deal with youthful offenders who cannot benefit from the specialized guidance and treatment contemplated by the system.

In *State v. M.M.,* 163 W.Va. 235, 248, 256 S.E.2d 549, 556–557 (1979), in discussing juvenile transfer proceedings, we stated:

> The decision to try a juvenile as an adult has enormous and lifelong consequences for the child and for society. The right to be treated as a juvenile is a valuable right.

---

**3.** Our standard of review for a constitutional challenge is, for legal issues, *de novo. See State*

*ex rel. Cooper v. Caperton,* 196 W.Va. 208, 470 S.E.2d 162 (1996).

But, the right must be balanced against society's legitimate and ever-growing concern about rapidly rising levels of juvenile crime. It is a balance that is difficult to strike. Yet, in each case we must make a good faith attempt to strike the balance.

Thus, our opinion today is another chapter in the "continuing, perhaps eternal search for a proper balance between the rehabilitative goals of the juvenile justice system and the need to protect the general public." *State v. D.D.*, 172 W.Va. 791, 794, 310 S.E.2d 858, 861 (1983).

The juvenile law of this state has developed both statutorily and judicially. *State v. Sonja B.*, 183 W.Va. 380, 384, 395 S.E.2d 803, 807 (1990). We identified the rights associated with our juvenile justice system as having a substantive constitutional dimension in *State ex rel. R.S. v. Trent*, 169 W.Va. 493, 497, 289 S.E.2d 166, 170 (1982) ("Juveniles are constitutionally entitled to the least restrictive treatment that is consistent with the purpose of their custody," *citing State ex rel. K.W. v. Werner*, 161 W.Va. 192, 242 S.E.2d 907 (1978).)

We have also stated that the determination of juvenile vs. adult jurisdiction is the ultimate province of the court. In *State v. D.D.*, *supra*, we held that the transfer decision was properly with the courts, and we questioned a system whereby whether a juvenile/adult transfer occurs is "determined simply by the ... [manner] in which the prosecutor brings the charges ...". 172 W.Va. at 796, 310 S.E.2d at 862–863. We have said that in making such a transfer determination, a court is not limited to considering the specific personal factors about a juvenile which may be enumerated by a transfer statute, and may consider other factors which are promulgated by this Court. *State ex rel. Cook*, *supra*. *See also* Syllabus Point 1, *State ex rel. Smith v. Scott*, 160 W.Va. 730, 238 S.E.2d 223 (1977).

Our cases have reflected a view of the role of courts in the adult/juvenile jurisdiction determination which was shared by the Supreme Court of Delaware in *Hughes v. State*, 653 A.2d 241 (Del.1994). In *Hughes*, the court found unconstitutional a Delaware statute which precluded all judicial review of the appropriateness of adult jurisdiction for a minor charged with serious offenses.

The Delaware court said in *Hughes:*

In essence, the statutory amendment has stripped the judiciary of its independent jurisdictional role in the adjudication of children by granting the charging authority the unbridled discretion to unilaterally determine which forum has jurisdiction.... [T]he statute has deprived children ... [of] the judicial counterweight which they are *constitutionally* entitled to receive.

653 A.2d at 249 (Emphasis added).

The *Hughes* court held that a "reverse amenability" hearing, at which a juvenile may present evidence tending to show that he or she is amenable to the rehabilitative functions of juvenile jurisdiction, was constitutionally required to be provided for all juveniles, and that denying such a hearing violated equal protection and due process. *Id.* at 253.

Turning for a moment away from the altered role of the circuit court under the new statutory language of *W.Va.Code*, 49–5–10 [1995], we look to the role of the prosecuting attorney under the statutory language in question.

*W.Va.Code*, 49–5–10 [1995] requires a circuit judge to automatically transfer a juvenile to adult criminal jurisdiction (1) if the prosecution makes a motion for such transfer, and (2) if the evidence presented at the hearing shows probable cause that the juvenile committed one of the enumerated offenses.

The statute does not state or suggest that the prosecutor is required to make a transfer motion for all juveniles for whom there is evidence which might support a finding of probable cause. Indeed, at oral argument in the instant case, it was suggested that the Fayette County prosecutor does not make transfer motions in many such cases.

The statutory language thus vests the prosecutor with the exclusive authority to select which of the juveniles—for whom he believes there is evidence which might support a finding of probable cause—will be presented to the circuit court for "automatic

transfer" (presuming that the circuit court finds probable cause that an enumerated offense was committed). *W.Va.Code*, 49–5–10 [1995] provides no standards to guide such a determination by a prosecutor, and no mechanism for the review of such a determination.

This statutorily-unfettered grant of authority to the prosecuting attorney to decide which juveniles will be presented to the circuit court for transfer implicates particular concerns about the constitutional guarantee of equal protection of the laws.

For example, if two juveniles in different counties commit essentially the same offense, and are essentially alike in terms of their "personal factors," one juvenile could be transferred to adult status and one remain as a juvenile—depending solely upon the different philosophies of two different prosecutors.

The equal protection concerns which arise from such a grant of (statutorily) unreviewable and standardless authority to a prosecuting attorney recently led the Supreme Court of Utah to hold that a Utah statute which gave prosecutors the role of determining which minors would be treated as adults in the criminal justice system violated Utah's state constitutional guarantee of "uniform operation of the laws." *State v. Mohi*, 901 P.2d 991 (Utah 1995).

The court in *Mohi* applied the traditional equal protection "reasonable relationship" test to the Utah statute. The court found that the prosecutor's decision as to which juveniles to file adult charges against was arbitrary and standardless and in the sole discretion of "prosecutors who have no guidelines as to how it is to be exercised." *Id.* at 999. The *Mohi* court noted that:

It is ironic that the Act sets out in thirteen full paragraphs all of the factors that a *court* must consider to certify a juvenile into the adult system . . . but contains *no*

guidelines for a prosecutor who may choose for any reason or no reason to place that juvenile into the adult system.

*Id.* at 999 (citations omitted).

Similarly, *W.Va.Code*, 49–5–10 [1995] poses no obstacle to the prosecutor's considering an unrestrained spectrum of personal and other factors about a juvenile offense and offender, in deciding whether to make a transfer motion. And the prosecutor's consideration is—according to the statute in question—entirely one-sided, private and unreviewable.

Under the "automatic transfer" provisions of *W.Va.Code*, 49–5–10 [1995], the crucial exercise of discretion in the transfer process has shifted from the circuit court—where interested parties compete for justice under established rules of an adversarial system and are subject to appellate review—to the private forum of an unreviewable, subjective decision of an executive officer.[4]

The *Mohi* opinion contrasts the on-the-record, public, reasoned, standards-based and reviewable judicial transfer determination with the off-the-record, private, standardless and unreviewable nature of the determination made by a prosecuting attorney, in deciding against which juveniles to bring a motion for transfer.

The court in *Mohi* also persuasively refutes the argument that the discretion historically afforded to prosecutorial charging decisions carries over to the

. . . discretion to choose which juveniles to prosecute in adult rather than in juvenile court. . . . The scope for prosecutor stereotypes, prejudices and biases of all kinds is simply too great. . . . The challenged statute [unconstitutionally] permits prosecutors to treat different offenders accused of the same criminal offense differently. 901 P.2d at 1003–1004.[5]

---

4. One of the nation's leading scholars on the issue of transfers from juvenile to adult jurisdiction, Professor Barry C. Feld, Centennial Professor of Law at the University of Minnesota, has recently repented of his early advocacy for "automatic waiver:" "In my first articles about transferring serious young offenders to criminal court, I naively extolled the virtues of eliminating judicial discretion. . . ." Feld, Barry C., "Violent Youth and Public Policy: A Case Study of Juve-

nile Justice Law Reform," 79 Minn.L.Rev. 965, 1051 (1995).

5. In *Committee on Legal Ethics v. Printz*, 187 W.Va. 182, 186, 416 S.E.2d 720, 724 we quoted *Yick Wo v. Hopkins*, 118 U.S. 356, 369–70, 6 S.Ct. 1064, 1071, 30 L.Ed. 220, 226, (1886):
When we consider the nature and the theory of our institutions of government, the principles upon which they are supposed to rest, and

*See also State v. Bell*, 785 P.2d 390, 408–411 (Utah 1989), Durham, J. (concurring and dissenting).

Concededly, until *Hughes* and *Mohi* were decided, "automatic transfer" mechanisms like that set forth in the 1995 changes to *W.Va.Code*, 49–5–10 [1995], which substantially reduce the ability of the judiciary to play a determinative role in making the fundamental "amenability to juvenile jurisdiction" decision, have routinely been held to be impermeable to constitutional concerns. *See, e.g., State in the Interest of A.L.*, 271 N.J.Super. 192, 200, 638 A.2d 814, 818 (1994); *see also, Hansen v. State*, 904 P.2d 811 (Wyo. 1995) (declining to follow *Mohi*).

We are guided by our longstanding jurisprudence emphasizing the constitutional need for reviewable, standard-driven determinations in connection with juvenile/adult jurisdictional transfers, and by our recognition of the unique ability of courts to provide a constitutionally adequate forum for such a crucial and fundamental determination.

We agree, in part, with the reasoning of the *Hughes* and *Mohi* opinions, to the extent that we believe that substantial equal protection and due process concerns are implicated by the statutory grant of authority to a prosecuting attorney of the standardless, unreviewable power to trigger against certain juveniles an "automatic transfer" process, in which the circuit court is itself entirely deprived of the ability to consider personal factors going to the amenability of a juvenile for the rehabilitative purposes of the court's juvenile jurisdiction.

Put another way, we believe that a statutory scheme which entirely divests and deprives a circuit court of its ability to meaningfully consider and weigh personal factors going to the suitability and amenability of a juvenile for the rehabilitative purposes of the court's juvenile jurisdiction, and which ascribes such responsibilities to the standardless and unreviewable discretion of a prosecuting attorney, might violate the juvenile's constitutional guarantees of equal protection and due process of law.

From these premises, we then take the next analytical step, and examine the statute challenged by the appellant, *W.Va.Code*, 49–5–10(d) [1995].

This statutory section cannot be considered in isolation. Rather, it must be considered *in pari materia* with language contained in a separate statutory section dealing with the dispositional alternatives available for juveniles, *W.Va.Code*, 49–5–13 [1995].

The following language of *W.Va.Code*, 49–5–13(e) [1995] was enacted in 1978, at the same time that the offense-specific transfer provisions of *W.Va.Code*, 49–5–10 were first put in place.

*W.Va.Code*, 49–5–13(e) [1995] states:

Notwithstanding any other provision of this code to the contrary, if a child charged with delinquency under this chapter is transferred to adult jurisdiction and there tried and convicted, the court may make its disposition in accordance with this section [dispositions under juvenile jurisdiction] in lieu of sentencing such person as an adult.

We recognized this statutory provision in *State v. Highland*, 174 W.Va. 525, 528, 327 S.E.2d 703, 706 (1985), stating that:

[T]he legislature has provided at least three alternatives to a sentencing court for the proper disposition of [a child who has been convicted of an offense under the adult jurisdiction of the circuit court] : ... the court may, 'in lieu of sentencing such person as an adult,' make its disposition under the section 49–5–13 provisions for treatment of juveniles adjudged delinquent.

Thus, *W.Va.Code*, 49–5–13 [1995] explicitly recognizes a circuit court's continuing ability to return a child to its juvenile jurisdiction [6]

---

review the history of their development, we are constrained to conclude that they do not mean to leave room for the play and action of purely personal and arbitrary power.

This court has emphasized that prosecutorial discretion must be "bounded by law." *State ex rel. Hamstead v. Dostert*, 173 W.Va. 133, 138, 313 S.E.2d 409, 414 (1984).

**6.** The ability of a court to transfer a case to its juvenile jurisdiction from its adult jurisdiction, even in the absence of explicit statutory authorization, was recognized in 1959 in an Opinion of

—and provides that the circuit court, after the adjudicatory process of the court's adult jurisdiction is completed, may determine that a juvenile should be returned to the juvenile jurisdiction of the court. While the statute does not speak to what matters may be considered by the court in making such a determination, we believe that, consistent with our cases, the court is empowered to consider a full range of personal factors in making such a determination.

The provisions of *W.Va.Code*, 49–5–13 [1995] provide a "safety-valve" which assures that the "automatic transfer" provisions of our juvenile transfer law do not unconstitutionally divest and deprive a circuit court of its ability to meaningfully consider and weigh personal factors going to the suitability and amenability of a juvenile for the rehabilitative purposes of the court's juvenile jurisdiction.[7]

### III.

### *Conclusion*

Therefore, we conclude that the "automatic transfer" provisions of the statute at issue in the instant case, *W.Va.Code*, 49–5–10 [1995], when read *in pari materia* with the provisions of *W.Va.Code*, 49–5–13 [1995], do not unconstitutionally divest and deprive a circuit court of the ability to consider personal factors going to the amenability of a juvenile for the rehabilitative purposes of the court's juvenile jurisdiction and to, in its discretion, return a child to juvenile jurisdiction.

the Attorney General, dated November 18, 1959, Volume 48, Opinion No. 63.

7. *See* O'Connor, Jennifer M. and Treat, Lucinda K., "Getting Smart About Getting Tough: Juvenile Justice and the Possibility of Progressive Reform," 33 *American Criminal Law Review* 1299, 1314, n. 116 (1996): "[m]ost [transfer] systems do include a safety valve mechanism for automatically-transferred juveniles to petition for waiver back to juvenile court jurisdiction."

8. Appellant contends that the juvenile court erred in transferring him to criminal jurisdiction because he was not charged "with a sufficient number of offenses" under the juvenile transfer statute. Appellant's argument relies entirely upon the fact that in the 1995 amendments to the transfer statute, the Legislature placed the word "and" within the list of enumerated crimes. According to appellant, the use of "and" within

The appellant's assignment of error based upon his contention that *W.Va.Code*, 49–5–10 [1995] is unconstitutional is therefore without merit. The appellant's other assignments of error are also without merit.[8] The judgment of the circuit court of Fayette County is affirmed.

Affirmed.

MAYNARD, Justice, concurring:

I wholeheartedly concur with the result in this case. It is perfectly proper for circuit judges to exercise ultimate discretion on transfer questions, including so-called "nondiscretionary" transfers. What I do not like about the majority opinion is the suggestion that prosecutors would be biased and prejudiced in making decisions regarding juvenile transfers. In their opinion, the majority says "[t]he scope for prosecutor stereotypes, prejudices and biases of all kinds is simply too great.... The challenged statute [unconstitutionally] permits prosecutors to treat different offenders accused of the same criminal offense differently." Prosecuting attorneys are quasi-judicial officers and there is simply no reason to believe, and no justification for this Court to state in this opinion, that prosecutors would permit "stereotypes, prejudices and biases" to influence prosecutorial decisions.

I would have preferred that the majority base this decision solely on the provisions of

*W.Va.Code*, 49–5–10(d) [1995] required a combination of at least two serious crimes before automatic transfer became possible.

However, on March 9, 1996, the Legislature passed a bill containing stylistic changes and other amendments to the statute governing juvenile proceedings. The 1996 Act removed the word "and" from 49–5–10(d). With the 1996 amendments, the Legislature cured any stylistic defect in *W.Va.Code*, 49–5–10(d), thereby rejecting the construction now urged by appellant and evidencing an intent that a juvenile be transferred for any *one* of the enumerated crimes. Appellant's challenge to the validity of the juvenile petition filed against him is also without merit, as is his contention that the admission of his birth certificate as evidence at the transfer hearing was erroneous.

W.Va.Code § 49–5–13 (1995) which clearly gives circuit courts power to return a child to juvenile jurisdiction. The majority could have reached this same result without making unwarranted suggestions that any West Virginia prosecuting attorney would allow biases or prejudices to influence any prosecutor's decision in any criminal case.