**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

**January 8, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 17-0167** (Clay County 16-JD-3)

**H.B.**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner H.B., by counsel Kevin W. Hughart, appeals the Circuit Court of Clay County's February 7, 2017, dispositional order placing him in the custody of the Division of Juvenile Services until he reaches the age of eighteen or graduates from high school, whichever is last.[1] The State, by counsel Robert L. Hogan, filed a response. On appeal, petitioner argues that the circuit court erred in failing to consider and make a record at disposition of the necessary factors to impose incarceration and by finding that there was no less-restrictive alternative than placing him in the custody of the Division of Juvenile Services.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2016, a juvenile petition was filed against petitioner after Clay County Middle School administrators learned of an attack being planned by several students. Petitioner was implicated during the investigation as one of the students participating in the plan and was subsequently placed on home incarceration. An amended juvenile petition was filed in July of 2016. In the amended petition, the State alleged that petitioner solicited a student to participate in the murder of several individuals at the middle school. The State further alleged that petitioner conspired to commit a terrorist act and committed an overt act in furtherance of the conspiracy by creating a plan to "shoot up and/or blow up" Clay County Middle School, killing students and school employees; soliciting or attempting to solicit other students to participate in carrying out the plan; and gathering pipe and Styrofoam to make bombs and/or incendiary devices. The State

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

also alleged that petitioner committed the acts in violation of West Virginia Code § 61-6-24, which prohibits threats of terrorist acts, conveying false information concerning terrorist acts, and committing terrorist hoaxes.

In July of 2016, the circuit court held an adjudicatory hearing during which petitioner pled guilty to two counts of crimes set forth under West Virginia Code § 61-6-24. After accepting petitioner's plea, the circuit court ordered that petitioner undergo a diagnostic evaluation. Petitioner was temporarily placed at Robert Shell Juvenile Center to undergo an in-depth, forty-day diagnostic evaluation. The psychological evaluation report indicated that petitioner maintained excellent behavior while in the program and was polite with all staff and peers, exhibited no outbursts, extreme anger, or violent tendencies, despite verbal provocation by other juveniles in the facility, and indicated that petitioner could be placed in a very strict and stringent treatment-based probation. The evaluator recommended that petitioner receive individual counseling regarding both his case and his history of childhood abuse by his mother and stated that home incarceration may be in order given the severity of the offences and the fact that petitioner likely would be unable to attend public school. A multidisciplinary team ("MDT") also recommended that petitioner be placed in a strict treatment-based probation. Following the evaluation, petitioner was again placed on home incarceration.

In February of 2017, the circuit court held a dispositional hearing. During the hearing, the State noted that petitioner had cooperated in the investigation and appeared remorseful for his actions. As such, the State recommended probation as an alternative to placing petitioner in a juvenile detention facility. Counsel for petitioner joined the State's recommendation, stating that petitioner had been on home incarceration since May of 2016, without any problems or violations. Further, petitioner addressed the circuit court and took full responsibility for his actions, apologizing to the State and the citizens of Clay County. Ultimately, the court found that it was contrary to the proper administration of justice to follow the recommendation of the State, noting that prior evidence revealed that petitioner did engage in acts of terror while at Clay County Middle School, which were to include the death of several individuals. Further, the circuit court stated that when all factors were considered, including petitioner's involvement with the planning of the act, the threat to public safety, and the best interests of petitioner, there was no less-restrictive alternative than to place him in the custody of the Division of Juvenile Services until he reached the age of eighteen or graduated from high school, whichever occurred last. It is from this February 7, 2017, dispositional order that petitioner appeals.

We have previously established the following standard of review for cases such as this:

> "In reviewing the findings of fact and conclusions of law of a circuit court . . . , we apply a three-pronged standard of review. We review the decision . . . under an abuse of discretion standard; the underlying facts are reviewed under a clearly erroneous standard; and questions of law and interpretations of statutes and rules are subject to a *de novo* review." Syllabus Point 1, *State v. Head*, 198 W.Va. 298, 480 S.E.2d 507 (1996).

Syl. Pt. 1, in part, *State v. Georgius*, 225 W.Va. 716, 696 S.E.2d 18 (2010).

On appeal, petitioner first argues that the circuit court erred in failing to consider the necessary factors for imposing disposition. We find petitioner's argument to be without merit. West Virginia Code § 49-4-714(b)(5)(A) authorizes a circuit court to commit a juvenile to a correctional institution for juveniles "upon a finding that the best interests of the juvenile or the welfare of the public require it, and upon an adjudication of delinquency[.]" Petitioner correctly points out that when a circuit court contemplates commitment to a correctional facility, it is required to make a record and set forth its reasons for selecting that dispositional alternative. To help circuit courts apply West Virginia Code § 49-4-714(b)(5)(A), we have held that, in juvenile proceedings, the circuit court is

> to make a record at the dispositional stage when commitment to an industrial school is contemplated under W.Va. Code, 49-5-13(b)(5) [1978] and where incarceration is selected as the disposition, the trial court must set forth his reasons for that conclusion. In this regard the court should specifically address the following: (1) the danger which the child poses to society; (2) all other less restrictive alternatives which have been tried either by the court or by other agencies to whom the child was previously directed to avoid formal juvenile proceedings; (3) the child's background with particular regard to whether there are pre-determining factors such as acute poverty, parental abuse, learning disabilities, physical impairments, or any other discrete, causative factors which can be corrected by the State or other social service agencies in an environment less restrictive than an industrial school; (4) whether the child is amenable to rehabilitation outside an industrial school, and if not, why not; (5) whether the dual goals of deterrence and juvenile responsibility can be achieved in some setting less restrictive than an industrial school and if not, why not; (6) whether the child is suffering from no recognizable, treatable determining force and therefore is entitled to punishment; (7) whether the child appears willing to cooperate with the suggested program of rehabilitation; and (8) whether the child is so uncooperative or so ungovernable that no program of rehabilitation will be successful without the coercion inherent in a secure facility.

Syl. Pt. 4, in part, *State ex rel. D.D.H. v. Dostert*, 165 W.Va. 448, 269 S.E.2d 401 (1980). *See also* Syl. Pt. 1, *State v. M.E.*, 170 W.Va. 367, 294 S.E.2d 171 (1982); *State ex rel. R.S. v. Trent*, 169 W.Va. 493, 498, 289 S.E.2d 166, 170 (1982).

We have previously stressed the importance of the development by the circuit court of a record which "discloses conclusively that the trial court has considered all relevant factual material and dispositional theories[.]" *D.D.H.*, 165 W.Va. at 471, 269 S.E.2d at 416. We have also held that "discretionary, dispositional decisions of the trial courts should only be reversed where they are not supported by the evidence or are wrong as a matter of law." *Id.*

Contrary to petitioner's argument, the circuit court considered the factors set forth above. The court took judicial notice of all prior evidence submitted and incorporated it into its findings at the dispositional stage and also considered other matters of record, including the evaluation performed at Robert Shell Juvenile Center. The transcript of the dispositional hearing reveals a discussion by the circuit court of the circumstances surrounding its conclusion that committing

petitioner to the Division of Juvenile Services was the least-restrictive alternative. In particular, the circuit court stated that it was

> of the opinion that it is contrary to the proper administration of justice for the [circuit c]ourt to follow the recommendation of the [D]ivision of [J]uvenile [S]ervices over the recommendation and request [of] the parties for placement upon probation . . . . There's no question as to [petitioner's] actions to engage in the acts of terror at Clay County School, which the acts of terror include the death of several individuals in that facility. The [circuit c]ourt is of the opinion that when [it] considers all factors, including [petitioner's] involvement in these acts of terrors and the planning of the acts of terror and to take acts of violence towards school personnel, and consider the threat to public safety, as well as consider the best interests of the juvenile, the [circuit c]ourt is of the opinion, that there is no less restrictive alternative to address all of these concerns, than the placement of the juvenile in the custody of the [D]ivision of [J]uvenile [S]ervices.

The dispositional hearing transcript also indicates that the circuit court considered petitioner's mental health issues and the seriousness of the crime and that its overarching concern was the safety of the public due to the seriousness of petitioner's actions. As previously mentioned, circuit courts may contemplate placement with the Division of Juvenile Services upon findings that the juvenile's best interests and the public welfare require it. As such, the circuit court, upon considering the evidence and testimony, made sufficient findings regarding its decision to place petitioner in the custody of the Division of Juvenile Services.

Petitioner next argues that the circuit court erred by placing petitioner in the custody of the Division of Juvenile Services as it was not the least-restrictive alternative available. We disagree. Rule 34(a) of the West Virginia Rules of Juvenile Procedure sets forth that

> "[j]uveniles adjudicated as delinquent or status offenders are entitled to be sentenced in the least restrictive manner possible that will meet their needs and protect the welfare of the public. The goal in disposition should be the rehabilitation of the juvenile to enable and promote becoming a productive member of society. In disposition, the court has discretion when determining terms and conditions, and is not limited to the relief sought in the petition. The court shall consider the best interests of the juvenile and the welfare of the public when rendering its decision."

Petitioner argues that the circuit court erred in not placing him on probation, against the recommendations of the evaluation and the State. While we are not unmindful of petitioner's good behavior and academic performance while on home incarceration and while at Robert Shell Juvenile Center, the circuit court did not abuse its discretion in finding that that he remains a risk to the community. In fact, the evaluator stated that, regarding the alleged terrorist acts, petitioner "does [play down] and minimize the actual intent to carry out such plans and says he generally feels he never would have gone through with carrying out any of the assaults or rampage." Also, despite his attempts to downplay his participation in or willingness to go along with the plot, the psychological evaluation report indicates that petitioner admitted to the evaluator that his role

was to "shoot the 8th graders on the second floor" and that they had chosen April 20th as the date of the assault because it was the anniversary of the infamous shooting at Columbine High School in Columbine, Colorado. Further, the results of a particular test that assessed personality characteristics and clinical pathology indicated a marginally valid profile because petitioner may have attempted to present an "unrealistically favorable picture of his personal virtue and moral values." Having considered the psychological evaluation, testimony, and other evidence submitted, the circuit court found that placement of petitioner in the custody of the Division of Juvenile Services was in the best interests of the juvenile and the public welfare and that no less-restrictive alternatives were available. Accordingly, we find that the circuit court's decision to commit petitioner to the Division of Juvenile Services' custody was within its discretion.

For the foregoing reasons, the circuit court's February 7, 2017, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**:  January 8, 2018

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker